UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS L. HAMPTON,<br><br>           Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN,<br><br>           Defendant. | Case No. 13-cv-04624-MEJ<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 15, 16 |

# INTRODUCTION

Plaintiff Dennis Hampton ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Carolyn Colvin, Acting Commissioner of Social Security, to deny his claim for benefits under Title II of the Social Security Act ("SSA"). Pending before the Court are parties' cross-motions for summary judgment. Dkt. Nos. 15, 16. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' papers, the Administrative Record ("AR") in this case, and relevant legal authority, the Court hereby REMANDS this case for further administrative proceedings for the reasons set forth below.

# BACKGROUND

Plaintiff was 43 years old at the time of his hearing before the Administrative Law Judge ("ALJ") and married. AR 43. He has some college education and graduated from truck-driving school. AR 44. Plaintiff has worked as a laborer, truck driver, warehouse worker, and customer service representative. AR 31. He has not worked since his accident on December 26, 2006. AR 26, 44. Plaintiff alleges worsening of a back injury, arthritis in his back, and depression, as well

syncope, fibromyalgia, and obesity.[1] AR 24.

## A. John Pendleton, M.D.

John Pendleton, M.D., has been Plaintiff's primary care physician since 2005. His treatment notes show a history of depression and chronic pain. AR 436-70. Dr. Pendleton's notes also indicate several "red flags," including problems giving urine samples and the need to follow opiate use carefully. AR 436, 440. Dr. Pendleton completed a cervical spine Residual Functional Capacity Questionnaire on March 3, 2011. AR 472-76. Dr. Pendleton diagnosed Plaintiff with degenerative disc disease and chronic neck and back pain and noted that he is also "quite impaired by chronic insomnia, anxiety, [and] depression. AR 472, 476. He concluded Plaintiff could sit for 15-20 minutes and stand for 5-10 minutes at a time, though he noted that this determination was "per patient history" and he would "need[] O.T. evaluation for true assessment." AR 474. He also concluded that in an eight-hour workday, Plaintiff could sit and stand and/or walk for a total of two hours. AR 475. He opined that Plaintiff needed to walk every thirty minutes for five minutes at a time. *Id.*

## B. John Alchemy, M.D.

John Alchemy, M.D., completed a comprehensive internal medicine evaluation on October 24, 2010. AR 379-83. Dr. Alchemy diagnosed chronic low back and neck pain, uncontrolled substance, hypertension, and ongoing tobacco abuse. AR 382. Dr. Alchemy determined Plaintiff had no limitations on sitting, standing, walking, or lifting.[2] AR 382-83. Though Plaintiff used a cane, Dr. Alchemy could not document a condition that would require such use, nor could he provide a reason for Plaintiff's "stated brief momentary loss of consciousness[3]…as anything

---

[1] Plaintiff has filed previous applications for Disability Insurance Benefits and Supplemental Security Income in October 2004 due to disability caused by a back injury, arthritis in his back, and depression. AR 23, 110. Those claims were initially denied on February 14, 2005, and ALJ James K. Steitz held a hearing on those matters on August 30, 2005. AR 23, 110. On December 29, 2005, ALJ Steitz found Plaintiff was not disabled. AR 23, 106-21. ALJ Steitz determined that although Plaintiff suffered from severe impairments, he could perform his past relevant work as an office worker. AR 23, 110, 119. ALJ Kwon noted the res judicata effect of ALJ Steitz's prior decision.

[2] The ALJ assigned little weight to Dr. Alchemy's opinion that Plaintiff had no other limitations as unsupported by the medical record as a whole. AR 30.

[3] While testing Plaintiff's range of motion of the neck, when Plaintiff "turn[ed] his head to the

1  related to an objective documented condition." *Id*.  Dr. Alchemy concluded Plaintiff should not

2  work at heights, around heavy machinery, at temperature extremes, or where work is safety

3  sensitive.  AR 383.  These limitations were imposed due to Plaintiff's stated loss of consciousness.

4  AR 383.

**C.    Marion-Isabel Zipperle, Ph.D.**

On October 28, 2010, Plaintiff underwent a comprehensive psychiatric evaluation with Marion-Isabel Zipperle, Ph.D. AR 386-89.  During the examination, Plaintiff claimed he was in chronic pain, depressed, and moody.  AR 386.  He also stated that he "very rarely drives," though he got into his truck and drove himself away after the examination.  *Id*.

Dr. Zipperle performed a mental status examination. AR 387-388. On examination, Dr. Zipperle noted that Plaintiff was polite and cooperative. AR 387. In the area of attitude and behavior, Dr. Zipperle noted that Plaintiff presented as depressed, quite, coherent and logical. AR 387. Dr. Zipperle also noted that Plaintiff suffers from flashbacks, nightmares, intrusive and racing thoughts, suicidality, no plan, and flights of fancy. AR 388. Dr. Zipperle found that upon mental examination, Plaintiff's mood/affect was depressed and despairing. AR 388. Dr. Zipperle noted no deficits upon testing of intellectual functioning. *Id*.

Dr. Zipperle diagnosed pain disorder with psychological features; PTSD; bipolar II disorder; panic disorder with agoraphobia; amphetamine dependence in remission; and personality disorder. AR *Id*. Dr. Zipperle described Plaintiff as having the following prognosis:

> The claimant's prognosis is poor due to the fact that he has mood swings keeping him from functioning correctly. He is expansive, has racing thoughts, is impulsive, does things he regrets, has poor judgment, had an accident in which that he re-lives, flashbacks, nightmares, intrusive thoughts, becomes equally depressed, no motivation, no energy, withdrawn, crying, helpless, hopeless, feeling self-esteem, self-confidence, suicidal with no plan, nightmares, anxiety about going out and being in crowds and open spaces. He does not have any apparent cognitive impairment. His impairments are emotional, psychological, and they would not improve in 12 months. He is in therapy periodically.

---

right side and tilt[ed] back, he close[d] his eyes and list[ed] backwards. He [was] easily supported and his eyes open[ed] within 2-3 seconds."  AR 381.  Plaintiff and his wife reported this "claimed loss of consciousness" is a "normal event with neck motion."  AR 381-82.

United States District Court
Northern District of California

AR 389.

Dr. Zipperle described Plaintiff's functional assessment as follows:

> (1) The claimant can perform simple and repetitive tasks.
>
> (2) The claimant could not accept instructions from supervisors or interact with coworkers and the public.
>
> (3) The claimant would need special or additional instructions to work. He could not maintain regular attendance in a workplace and he would have problems completing a workday because of his performance issues from his psychiatric problems.
>
> (4) The claimant has impaired ability to handle stress in a workplace.

AR 389.

**D.    Norman Zukowsky, Ph.D.**

On November 17, 2010, State agency psychiatric consultant Norman Zukowsky, Ph.D., completed two checklist forms, a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment. AR 31, 393-406. In the Psychiatric Review, Dr. Zukowsky determined Plaintiff has (1) mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, (3) moderate difficulties in maintaining concentration, persistence, or pace, and (4) no repeated episodes of decompensation. AR 401.

In the Mental Residual Functional Capacity Assessment, Dr. Zukowsky determined that Plaintiff can: (1) understand and remember one- and two-step instructions, (2) accept supervision, and (3) generally get along with others. AR 406. However, Dr. Zukowsky also concluded that because Plaintiff's psychiatric symptoms may interfere with his interactions with others, he should not interact with the public consistently. *Id*. As such, he opined that Plaintiff could work if assigned one- or two-step duties in a non-public setting. *Id*.

Dr. Zukowsky also reported that the accuracy of Plaintiff's reports are uncertain based on the claim that he does not drive, but was seen driving away from his appointment with Dr. Zipperle. AR 409. Further, Dr. Zukowsky found that Dr. Zipperle's assessment "confuses what [Plaintiff] has reported and what she observes or concludes." *Id*. Further, the "diagnoses and deficits in [Plaintiff's] work-related abilities appear largely unsupported except by claimant

4

allegation." *Id*. Dr. Zukowsky found that "because [Plaintiff] is able to drive/travel independently when necessary, is fulfilling requirements of an online school, and interacts with others in an acceptable fashion," Plaintiff "can at least perform duties of a few steps in a competitive, nonpublic work setting." *Id*.

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On July 19, 2010, Plaintiff filed a claim for a period of disability and Disability Insurance Benefits, alleging a disability beginning December 26, 2006.  AR 23, 178-79.  The Social Security Administration initially denied Plaintiff's application on December 3, 2010 and upon reconsideration on February 18, 2011.  AR 126-30, 139-44.  On April 7, 2011, Plaintiff requested a hearing before an ALJ.  AR 145-46.  ALJ K. Kwon conducted a hearing on September 19, 2011, at which Plaintiff appeared and testified.  AR 39-105.  The ALJ also heard testimony from Vocational Expert Malcom Brodzinsky.  AR 86-104.

**A.    Plaintiff's Testimony**

At the July 2010 hearing, Plaintiff testified that he had not worked since December 26, 2006, the date of his accident, but that he has taken online college classes since September 2010. AR 45, 49.  He stated that he drives "only in a rare emergency."  AR 48.  He reported that he has driven twice in the last few years.  *Id*.  He also testified that he suffers from back and neck pain, which prevent him from sitting for long periods of time, and frequent episodes of syncope.  AR 56-57, 60-63.  He reported that his medications "cover about 75 percent of the pain."  AR 57. Plaintiff has not sought treatment for the remainder of the pain.  AR 58, 60.  Plaintiff stated that he can carry up to ten pounds, takes online college classes, pursues his hobby of photography, and visits his parents weekly.  AR 73-78.  He further testified that he sees his primary care physician once a month and has seen various mental health specialists sporadically since 2007.  AR 59-60, 63, 67-70.

With regard to mental health, Plaintiff testified that he saw a therapist, Dr. Seever, in 2008-2009.  AR 67-70.  He stopped because he did not get along with her.  AR 68.  He also recently saw Dr. Winestock, and hoped to have another appointment soon.  AR 67.

Plaintiff testified that he typically wakes up around 10:00 or 10:30.  AR 71.  He takes his

medication and sits in bed for two hours until his medication takes effect. *Id*. He then sits in his recliner, where he stays for half the day, until his back hurts and he needs to change positions. *Id*. He periodically walks around the house. AR 72. On a "really good day," he goes to the store with his wife, using motorized cart to get around. *Id*.

### B. Vocational Expert's Testimony

The ALJ presented the vocational expert, Malcom Brodzinsky, with the following hypothetical:

> [A]ssume we have an individual with the claimant's age, education, and background, and this individual is restricted to no more than light work. This individual needs a sit/stand option at will, and should be restricted from working frequently with the general public, and restricted from tandem work with coworkers,…mean[ing] coordinated work simultaneously with another individual….There should be no climbing of ladders, ropes, or scaffolds in this job…and I want to restrict this hypothetical individual from jobs that involve working with hazardous machinery, working at heights, and working in…temperature extremes.

AR 97. The ALJ asked Mr. Brodzinsky to give two representative samples of work. AR 98. Because the DOT does not address a sit and stand option at will, Mr. Brodzinsky drew upon his "professional experience as a job developer and labor-market survey person." AR 99. He testified that such a hypothetical person could work as a small products assembler, optical goods assembler, and electrical accessories assembler. AR 32, 99-103.

### C. The ALJ's Findings

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled. 20 C.F.R. § 404.1520(a). The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id*. (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined the Plaintiff had not engaged in substantial gainful activity since December 26, 2006. AR 26.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff has the following severe impairments: headaches, degenerative disc disease, arthritis, syncope of an unknown etiology, fibromyalgia, obesity, depression, anxiety, and bipolar disorder. AR 25.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpart. P, Appendix. 1. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, she is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff does not have an impairment or combination of impairments meeting or equaling in severity any set forth in Listing of Impairments. AR 26-27.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined Plaintiff has the RFC to perform less than a full range of light work with limitations. AR 27. Plaintiff (1) requires a sit and stand option at will; (2) must avoid frequent contact with the public and tandem work with

1  coworkers; (3) cannot climb ladders, ropes, or scaffolds; and (4) cannot perform work with
2  hazardous machinery, heights, and temperature extremes.  AR 27-28.  The work should require no
3  more than simple tasks.  AR 28.
4        The fourth step of the evaluation process requires that the ALJ determine whether the
5  claimant's RFC is sufficient to perform past relevant work.  20 C.F.R. § 404.1520(a)(iv)(4), (f).
6  Past relevant work is work performed within the past 15 years that was substantial gainful activity,
7  and that lasted long enough for the claimant to learn to do it.  20 C.F.R. § 404.1560(b)(1).  If the
8  claimant has the RFC to do his past relevant work, the claimant is not disabled.  20 C.F.R. §
9  404.1520(a)(4)(iv).  Here, the ALJ determined Plaintiff was unable to perform any past relevant
10 work.  AR 31.
11       In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there
12 are other jobs existing in significant numbers in the national economy which the claimant can
13 perform consistent with the claimant's RFC, age, education, and work experience.  20 C.F.R. §§
14 404.1520(g); 404.1560(c).  The Commissioner can meet this burden by relying on the testimony of
15 a vocational expert or by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404,
16 subpt. P, app. 2.  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  Here, the ALJ
17 determined that considering Plaintiff's age, education, work experience, and RFC, he has acquired
18 work skills from past relevant work that are transferable to other occupations with jobs existing in
19 significant numbers in the national economy.  AR 31-32.

20 **D.    ALJ's Decision and Plaintiff's Appeal**
21       On November 15, 2011, the ALJ issued an unfavorable decision finding that Plaintiff was
22 not disabled.  AR 20-33.  This decision became final when the Appeals Council declined to review
23 it on June 19, 2013.  AR 7-13.  Having exhausted all administrative remedies, Plaintiff
24 commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  Dkt. No. 1.  Plaintiff
25 filed the present Motion for Summary Judgment on April 17, 2014.  Pl.'s Mot., Dkt. No. 15.  On
26 May 8, 2014, the Commissioner filed a Cross-Motion for Summary Judgment.  Def.'s Mot., Dkt.
27 No. 16.
28

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Jamerson v. Chater*, 112 F.3d 1064. 1066 (9th Cir. 1997), *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

In his Motion for Summary Judgment, Plaintiff raises two arguments to support his position that he is entitled to benefits. First, Plaintiff argues that the ALJ improperly rejected the medical evidence from the examining psychologist, Marion-Isabel Zipperle, Ph.D. Dkt. No. 15 at 2. Second, Plaintiff argues that the ALJ failed to provide legally sufficient reasons to reject the medical evidence and Plaintiff's testimony. *Id*. at 9.

### A. Dr. Zipperle's Opinion

Plaintiff challenges the ALJ's failure to give sufficient weight to the opinion of the state's examining physician, Dr. Zipperle, who assessed that Plaintiff: (1) "could not accept instructions from supervisors or interact with co-workers and the public"; (2) "would need special or additional instructions to work"; (3) "could not maintain regular attendance in a workplace"; (4) "would have problems completing a workday because of his performance issues from his psychiatric problems;" and (5) "has impaired ability to handle stress in a workplace." AR 389. The ALJ did not entirely reject Dr. Zipperle's assessment; rather, the ALJ gave the opinion limited weight in concluding that Plaintiff was limited unable to handle workplace stress, maintain regular attendance, or complete work assignments on time. AR 30-31.

The ALJ gave "limited weight" to Dr. Zipperle's opinion "because of its internal inconsistency and heavy reliance on the claimant's subjective complaints without any independent support." AR 30. The ALJ did, however, give "some weight" to Dr. Zipperle's determination that Plaintiff may have difficulty with others, as this finding was supported by other psychiatric evidence. AR 31. Instead, the ALJ afforded "great weight" to Dr. Zukowsky's opinion, noting Dr. Zukowsky "considered the record as a whole, including the inconsistencies between [Plaintiff]'s reports of activities of daily living and the evidence of record, as well as the inconsistencies within the consultative examiner's report." *Id*.

Plaintiff argues that the ALJ improperly rejected the opinion of examining psychiatrist, Dr. Zipperle in favor of the opinion of a non-examining state reviewing physician. Pl.'s Mot. at 2. Specifically, Plaintiff argues that the ALJ failed to articulate a legally sufficient rationale to reject Dr. Zipperle's opinion, while giving substantial weight to the opinion of Dr. Zukowsky. *Id*. at 2, 7. Plaintiff cites *Ryan v. Comm'r of Soc. Sec. Admin.*, where the court held that the ALJ improperly rejected an examining doctor's opinion for being "based too heavily on [the plaintiff's] 'subjective complaints' " and unsupported by the treating doctor's records. 528 F.3d 1194, 1199 (9th Cir.2008). The court in *Ryan* held that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his

1  ultimate opinion with his own observations." *Id*. at 1199–1200.

2  In response, the Commissioner argues that the ALJ provided a basis for challenging the
3  opinion of the examining physician, and thus his position was substantially justified. Def.'s Mot.
4  at 4. The ALJ gave the examining psychiatrist's opinion "little weight" because it "was internally
5  inconsistent and relied heavily on Plaintiff's subjective complaints without any independent
6  support." Def.'s Mot. at 3. The Commissioner further contends that Dr. Zipperle's opinion
7  conflicts with Plaintiff's reported activities, such as taking online college courses, working on his
8  computer, and pursuing his hobby of photography. *Id*. at 4. Additionally, the Commissioner
9  argues the ALJ had discretion to resolve inconsistencies between the conflicting opinions of Drs.
10 Zipperle and Zukowsky. *Id*.

11 "Cases in [the Ninth Circuit] distinguish among the opinions of three types of physicians:
12 (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the
13 claimant (examining physicians); and (3) those who neither examine nor treat the claimant
14 (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An examining
15 physician's opinion is given greater weight than the opinion of a nonexamining physician. *Id*. at
16 830. "An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a
17 nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and
18 those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184
19 (9th Cir. 1995). A claimant's subjective self-history "can be a legitimate basis for discounting a
20 doctor's evaluation, provided the claimant's credibility is questioned." *Jones v. Barnhart*, 56 F.
21 App'x 818, 820 (9th Cir. 2003). However, "[t]he opinion of a nonexamining physician cannot by
22 itself constitute substantial evidence that justifies the rejection of the opinion of…an examining
23 physician." *Lester*, 81 F.3d at 831.

24 There is no question that Dr. Zipperle is an examining psychologist. Pl.'s Mot. at 3, Def.'s
25 Mot. at 3. Additionally, as Plaintiff correctly argues that opinions that are explained are given
26 more weight than to those that are not, Dr. Zukowsky's checklist form evaluation generally carries
27 less weight than Dr. Zipperle's opinion. Pl.'s Mot. at 7-8; *Holohan*, 246 F.3d at 1202. Because
28 Dr. Zipperle's opinion is contradicted by that of Dr. Zukowsky, the ALJ must provide "specific

and legitimate" reasons for rejecting Dr. Zipperle's opinion that are supported by substantial evidence in the record. *Lester,* 81 F.3d at 830-31 (citations omitted).

The ALJ found that Dr. Zipperle's determinations regarding Plaintiff's "poor prognosis due to mood swings, impulsivity, racing thoughts, poor judgment, and other symptoms" were inconsistent with Dr. Zipperle's findings that Plaintiff was "quiet, coherent and logical in attitude and behavior, oriented to time and place, and had no problems with memory, abstract thinking, similarities/differences, or judgment/insight." AR 30. Due to this inconsistency, it was the ALJ's position that Dr. Zipperle relied too heavily on Plaintiff's subjective complaints in reaching her conclusion that Plaintiff "is unable to handle workplace stress, maintain regular attendance, or complete work assignments on time." *Id*. The ALJ further stated that Dr. Zipperle's findings are inconsistent with other "residual functional capacity and medical evidence, such as [Plaintiff]'s ability to pursue online college classes, regularly work on his computer, and engage in photography." AR 30-31.

The ALJ may disregard medical opinions when they are based on discredited subjective complaints. *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir.1989). Here, the ALJ did not find Plaintiff's subjective complaints to be fully credible, as discussed further below. AR 28 ("the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment"). Thus, the ALJ reasonably rejected Dr. Zipperle's assessment where the findings noted in her evaluation were primarily based on Plaintiff's subjective complaints. For example, Dr. Zipperle noted that "[Plaintiff's] prognosis is poor, due to the fact he has mood swings keeping him from functioning correctly. He does not have any apparent cognitive impairment. His impairments are emotional, psychological, and they would not improve in 12 months." AR 389.

Dr. Zipperle made observations about Plaintiff's general appearance, attitude and behavior during her mental status examinations. AR 386. During the examination, Dr. Zipperle also performed a series of intellectual functioning tests. AR 387. In assessing Plaintiff's ability to work, however, Dr. Zipperle relied primarily on Plaintiff's subjectively reported symptoms and

12

1  limitations: "[Plaintiff] is expansive, has racing thoughts, is impulsive, does things he regrets, has
2  poor judgment, had an accident in which that he relives, flashbacks, nightmares, intrusive
3  thoughts, becomes equally depressed, no motivation, no energy, withdrawn, crying, helpless,
4  hopeless, feeling self esteem, self confidence, suicidal with no plan, nightmares, anxiety about
5  going out and being in crowds and open spaces." AR 389. Dr. Zipperle did not cite her own
6  observations in assessing Plaintiff's limitations.

In *Ryan*, by contrast, the treating doctor relied on his own clinical observations during his mental status examination to support his conclusion that Ryan was incapable of maintaining a regular work schedule: "Behavior and mannerisms are somewhat odd. She has rapid speech.... She is easily agitated and appears to be very angry[;] anxious, distraught, nervous, shaky, and edgy." *Ryan*, 528 F.3d at 1199. Here, there is substantial evidence in the record to support the ALJ's finding that Dr. Zipperle's assessment did not rely on evidence or observations other than Plaintiff's self-reported symptoms to conclude that Plaintiff would not be able to perform most jobs. AR 31.

With respect to credibility, the ALJ's rejection of Dr. Zipperle's opinion was based on an assessment of Plaintiff's testimony regarding his abilities. The ALJ is not required to accept a treating doctor's opinion that is not supported by clinical evidence and is based on the claimant's subjective complaints. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.2005) (citing *Thomas*, 278 F.3d at 957) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.")); *see also Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir.2010) (finding specific and legitimate reasons for rejecting the treating physician's opinion to the extent that it suggested that the claimant was disabled where the record did not support the claim and the opinion was "'based almost entirely on the claimant's self reporting[,]' ... without any independent analysis or diagnosis ... [or] 'objective findings to substantiate' a claim" of disability).

Plaintiff does not point to medical records, other than opinion evidence, to show that the ALJ's decision was not supported by substantial evidence. Plaintiff contends, however, that the ALJ also improperly "gave substantial weight to the non-examining record review opinion of the

state agency physician and accepted that opinion over Dr. Zipperle." Pl's Mot. at 7. Plaintiff argues that the opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id*. (citing *Lester*, 81 F.3d at 830–831). However, the ALJ may rely on a non-examining doctor's opinion with something more, such as laboratory test results or the claimant's testimony, to reject a treating doctor's opinion. *Id*. at 831 (citing *Magallanes*, 881 F.2d at 751–55; *Andrews*, 53 F.3d at 1043; *Roberts*, 66 F.3d at 184).

Here, in weighing the opinion evidence, the ALJ did not merely cite the non-examining doctor's opinions, but also noted that Dr. Zukowsky considered the record as a whole, including the inconsistencies between the claimant's reports of activities of daily living and the evidence of record, as well as within the consultative examiner's report. AR 31. Dr. Zukowsky reported that the accuracy of Plaintiff's reports are uncertain based on the claim that he does not drive, but was seen driving away from his appointment with Dr. Zipperle. AR 409. Further, Dr. Zukowsky found that Zipperle's assessment "confuses what [Plaintiff] has reported and what she observes or concludes." *Id*. The "diagnoses and deficits in [Plaintiff's] work-related abilities appear largely unsupported except by claimant allegation." *Id*. Dr. Zukowsky noted that the accuracy of Plaintiff's reports were uncertain because they conflicted with his observed behavior, i.e., driving away from the consultative examination. *Id.* Dr. Zukowsky then opined that "because [Plaintiff] is able to drive/travel independently when necessary, is fulfilling requirements of an online school, and interacts with others in an acceptable fashion," Dr. Zukowsky also opined that Plaintiff "can at least perform duties of a few steps in a competitive, nonpublic work setting." *Id*. Accordingly, Dr. Zukowsky's assessment included detailed notes to explain the check-box summary of findings, and was not merely a standardized check-box form review. See AR 409; c*f. Ryan*, 528 F.3d at 1201–02 (check-box assessment form completed by non-examining physicians contained no supporting explanation for bare conclusions and did not outweigh other evidence in the record).

The ALJ found the record did not support Plaintiff's reported symptoms and limitations, on which Dr. Zipperle based her assessment. AR 30-31. Dr. Zukowsky's finding, which was based on a review of the entire record, was consistent with the ALJ's own finding that the record

14

did not support Plaintiff's self-reported symptoms and limitations. This provides a specific and legitimate reason to discount Dr. Zipperle's opinion that Plaintiff was unable to work due to inability to handle workplace stress, maintain regular attendance, or complete work assignments on time.

**B.     Plaintiff's Credibility**

Plaintiff next argues the ALJ "improperly assessed his subjective symptom testimony in assessing the residual functional capacity." Pl.'s Mot. at 9. Plaintiff contends the ALJ failed to apply the proper analysis and incorrectly rejected Plaintiff's testimony because it was "inconsistent with what the ALJ believe[d] it should be." *Id*. at 10-11.

In response, the Commissioner argues the ALJ correctly discounted Plaintiff's testimony because his allegations of pain were "generally inconsistent with Plaintiff's treatment-seeking history." Def.'s Mot. at 5. Additionally, the Commissioner argues Plaintiff's allegations of pain and inability to do most daily activities are contradicted by the medical record and Plaintiff's own account of his hobbies. *Id*. at 5-6.

An ALJ must use a two-step analysis in determining whether a claimant's testimony about their subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). First, it must be determined "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). A claimant does not need to "'show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; [he] need only show that it could reasonably have caused some degree of the symptom.'" *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

Second, if the claimant has met the first step and there is no affirmative evidence of malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id*. (quoting *Smolen*, 80 F.3d at 1281). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. "At the same time, the

15

ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Molina*, 674 F.3d at 1112 (quoting *Fair*, 885 F.2d at 603).

In evaluating a claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation," such as "consider[ing] inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct"; "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"; and "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id*. (internal quotations and citations omitted).  Thus, "[w]hile a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *Id*. at 1112–13 (internal quotations and citations omitted).  "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id*. at 1113 (internal quotations and citations omitted).

Here, the ALJ answered the first step in the analysis, finding Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 28.  The ALJ next determined Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the…residual functional capacity assessment." *Id*.

The ALJ then rejected Plaintiff's symptoms "as severe and limiting as alleged" because it was inconsistent with the objective evidence.  A November 3, 2010 radiological examination of Plaintiff's lumbar spine revealed no acute fractures and normal vertebral height, with only marginal spurring.  AR 459.  A February 2011 MRI of Plaintiff's cervical spine showed multilevel disc degeneration and spondylosis, but no central spinal stenosis or disc compression.  AR 468.

Similarly, there were no medical findings to explain Plaintiff's episodes of syncope. Plaintiff underwent a cerebral angiogram in July 2007, which revealed no evidence for aneurysm or hemorrhaging.  AR 492-98.  Plaintiff stated he experienced a "loss of consciousness" during

1 Dr. Alchemy's examination, but the doctor could not document a condition to explain the episode.
2 AR 382-83. A December 2010 CAT scan of Plaintiff's brain showed no acute abnormalities. AR
3 470, 478. Chest x-rays also failed to show any abnormalities to explain Plaintiff's syncope. AR
4 716.

5       The ALJ also discounted Plaintiff's testimony due to his treatment-seeking history. AR
6 29. Plaintiff testified that he does not usually go to the hospital after he passes out, though it
7 occurs two to three times a week. AR 62. He states that he saw a neurologist in 2008, but has
8 "tabled" the issue since then. AR 66. Plaintiff's failure to seek treatment is a factor that weighs
9 against a finding of disability, but such evidence cannot be held against him if there is a legitimate
10 explanation. *See Jones*, 56 F. App'x at 821 ("Although failure to follow a treatment plan or to
11 seek treatment is evidence that weighs against a finding of disability, if there is a legitimate
12 explanation for failure to treat a disorder, that failure cannot be held against a claimant.") Plaintiff
13 testified that had recently made appointments with a cardiologist and for a nerve conduction study
14 in 2010, but he was unable to go because he could not afford it. AR 67. Plaintiff also did not seek
15 further testing after his CAT scan in December 2010. AR 63-64. However, the ALJ noted that he
16 was told not to increase his medication following an episode of dizziness in August 2011, as this
17 may be a reason for his symptoms. AR 29, 765. The ALJ concluded that this suggested that
18 Plaintiff's symptoms are "caused by factors unrelated to any physical impairment." AR 29.

19       Plaintiff contends that the ALJ improperly rejected plaintiff's subjective complaints based
20 on his perception of plaintiff's activities of daily living, and how those activities relate to an ability
21 to work. To determine whether a claimant's testimony regarding subjective pain or symptoms is
22 credible, the ALJ must first find whether the claimant's condition could reasonably be expected to
23 produce the pain or other symptoms alleged. *Lingerfelter v. Astrue*, 504 F.3d 1028, 1036 (9th
24 Cir.2007). Then, the ALJ can reject the claimant's testimony about the severity of his symptoms
25 "only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281.
26 Here, the ALJ found that Plaintiff's impairments could reasonably be expected to produce pain
27 and other alleged symptoms, fulfilling the first requirement, and thus the ALJ was required to
28 provide clear and convincing reasons for discrediting plaintiff's subjective complaints.

17

The Court finds that the ALJ did not meet this standard. AR 29. The ALJ found that the lack of medical evidence to support Plaintiff's alleged episodes of syncope, as well as the fact that he was seen driving despite his representation that he only drives in an emergency, reduced Plaintiff's credibility. AR 29-30. The ALJ also refers to Plaintiff's reported activities as evidence that his allegations of pain and inability to do most daily activities are not as severe as he claims. AR 29. The Court finds that the ALJ overstated the significance of Plaintiff's ability to engage in activities of daily living and take online college courses. The ALJ referred to the fact that Plaintiff takes online college courses as a reason for rejecting Plaintiff's functional limitations. *Id*. But Plaintiff testified he enrolls in one class at a time and has had problems completing them. AR 49-56. He failed three or four courses due to his inability to spend enough time at the computer. AR 54. Plaintiff had requested, but had not received accommodations for his disability. *Id*. The ALJ also relied on Plaintiff's testimony that he "is able to cook, shop, do laundry, and carry groceries weighing less than 10 pounds." AR 29. During Plaintiff's testimony, he stated that he only goes to the grocery store approximately twice a month. AR 72. He further testified that his wife does most of the household chores and he in fact does "very little." AR 73. Although he likes to practice photography, he often does it seated in his car and had not done any for about six to eight months at the time of the hearing. AR 75-76.

Similarly, although Plaintiff is able to independently perform some limited activities of daily living, Plaintiff testified about the difficulties he encountered in doing so, and also about the many limitations he experienced in his daily life. Plaintiff testified that the only household chores he is able to perform is helping his wife by rinsing dishes at the sink for 5-10 minutes, and carrying light grocery bags twice a month. AR 73. Plaintiff testified that his wife "does everything," including cooking all the meals, laundry, animal care, and housework. AR 41. The ALJ gave no reason to disbelieve these statements and to conclude that Plaintiff could regularly cook, shop and do laundry. AR 29.

Plaintiff also testified that while photography gave him great joy, he had been unable to pick up his camera for the last eight months. AR 76. Plaintiff's testimony is consistent with the treatment notes that show the last report of photography activity in March of 2010, seven months

18

before the hearing. AR 307-08. The ALJ also relied on psychiatric notes from 2008 that showed that Plaintiff was an active participant in a ghost-hunting group, which the ALJ found likely required physical and mental activity inconsistent with the level of pain and fatigue alleged. AR 29. However, there is no testimony as to what the ghost hunting entailed, or Plaintiff's physical or mental level of involvement. Moreover, Plaintiff left the group after only a short while.

Plaintiff also testified that he was unable to work because he was in constant pain and passed out every two to three days. AR 29, 56-67, 70-73, 208-15. He testified that his medications relieved only 75 percent of his pain and made him sleepy and dizzy. Plaintiff stated that, on average days, he woke up at 10:30 a.m. and sat in bed for a couple hours until his medication took effect. Thereafter, he sat in a recliner for the rest of the day, watching television or using the internet. On good days, which, he testified, occurred just twice a month, he got dressed and went to the store with his wife. At the store, he rode in a motorized vehicle to get around. According to his wife, he was completely bedridden and only got up to go to the bathroom or move to a chair. AR 29, 208, 263. He also visited his parents once a week. AR 73-78.

There is no question that Plaintiff was taking a number of pain medications, which made him drowsy and dizzy. AR 473 (drowsiness and dizziness caused by Dilaudid and Klonopin). Plaintiff's treating physician also opined in March 2011 that Plaintiff was "quite impaired" by chronic insomnia, anxiety, and depression, and that these conditions, as well as Plaintiff's experience of pain were severe enough to frequently interfere with Plaintiff's attention and concentration in performing even simple work tasks. AR 474-76. There is also no question that Plaintiff has been diagnosed with syncope, and that he continued to experience episodes, including an episode which was documented during the 2010 consultative examination. While the ALJ found that one examiner suggested medication may have caused Plaintiff's syncope in 2011 (AR 29), the record is far from conclusive on this issue, and should not weigh against Plaintiff's credibility as to the frequency and effect of occurrence, considering Plaintiff's extensive record of seeking treatment for this problem, beginning in 2006.

Accordingly, on remand the ALJ must reassess the evidence in the record and, if the ALJ

continues to discount any of Plaintiff's subjective complaints, must provide clear and convincing reasons for doing so consistent with this order. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (evidence that claimant could assist with household chores was not determinative of disability; a claimant need not "vegetate in a dark room excluded from all forms of human and social activity" to be unable to engage in substantial gainful activity).

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby REMANDS this case for further administrative proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: August 12, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge